**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 12 2015, 9:49 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELIZABETH A. HOUDEK**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JENNY R. BUCHHEIT**
**STEPHEN E. REYNOLDS**
Ice Miller LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE CIVIL COMMITMENT OF: | ) | |
| | ) | |
| | ) | |
| R.S. | ) | |
| | ) | |
| Appellant-Respondent, | ) | No.  49A02-1405-MH-357 |
| | ) | |
| vs. | ) | |
| | ) | |
| GALLAHUE MENTAL HEALTH SERVICES, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara Collins, Special Judge
Cause No. 49D08-1307-MH-027630

**January 12, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

R.S. appeals an order extending her temporary commitment to Community North / Gallahue Mental Health Services ("Gallahue") for ninety additional days of outpatient treatment. She presents the sole issue of whether sufficient evidence supported the order. We affirm.

**Facts and Procedural History**

R.S. has been diagnosed as schizophrenic. In 2013, she was admitted to Gallahue after she barricaded herself inside her apartment without food. She elected to receive voluntary mental health treatment without commitment. In early 2014, a mental health counselor initiated an application for emergency detention of R.S. because R.S. expressed fear of her neighbors, was non-compliant with medication, and had begun calling 9-1-1 frequently. R.S. again elected to continue treatment on a voluntary basis.

On January 17, 2014, R.S. was again admitted to Gallahue upon an application for emergency detention. The application was initiated by an Indianapolis police officer who had observed that R.S. appeared to be hearing voices and believed that crimes were occurring although the reported crimes lacked a factual basis. On January 29, 2014, the trial court conducted a hearing and concluded that Gallahue had demonstrated that R.S. was suffering from a mental illness, was dangerous and gravely disabled, and needed treatment at Gallahue for a period not to exceed ninety days.

On April 21, 2014, prior to the end of the commitment period, Gallahue filed a request to extend R.S.'s commitment. On April 29, 2014, the trial court conducted a hearing and received medical testimony. On the same date, the trial court issued an order

extending R.S.'s temporary commitment until July 28, 2014. The trial court found that R.S. presented a danger to herself or others. R.S. was ordered to take her medication as prescribed, attend all clinic sessions as scheduled, and provide the trial court and Gallahue with location information. R.S. appeals, contending that the evidence did not establish that she is a danger to herself.

**Discussion and Decision**

R.S.'s period of commitment has passed and thus the State argues that the appeal is moot because we cannot afford R.S. practical relief. In general, we dismiss cases that are moot; however, a moot case may be decided on its merits when it involves a question of great public interest, such as involuntary commitment. <u>Commitment of S.T. v. Comm. Hosp. North</u>, 930 N.E.2d 684, 687 (Ind. Ct. App. 2010).

Civil commitment is a significant deprivation of liberty. Accordingly, to satisfy the requirements of due process, the State must prove by clear and convincing evidence the facts justifying an involuntary commitment. <u>Commitment of M.M.</u>, 826 N.E.2d 90, 96 (Ind. Ct. App. 2005), <u>trans. denied</u>. Indiana Code section 12-26-2-5(e) requires that a petitioner demonstrate that (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate. "Mental illness" is defined as "a psychiatric disorder that (A) substantially disturbs an individual's thinking, feeling, or behavior; and (B) impairs the individual's ability to function." Ind. Code § 12-7-2-130. "Dangerousness" for our purposes is defined as "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." Ind. Code § 12-7-2-53.

3

When we review a challenge to the sufficiency of the evidence with respect to mental health commitment proceedings, we consider the evidence most favorable to the trial court's decision and the reasonable inferences to be drawn therefrom. M.M., 826 N.E.2d at 96. We neither reweigh the evidence nor judge the credibility of the witnesses. Id. If the trial court's commitment order represents a conclusion that a reasonable person could have reached, we will affirm the order. Id.

Dr. Dennis Anderson, the supervising psychiatrist at Gallahue Continuing Services Program, testified that R.S. lacks insight into her mental illness and refuses to take her injectable medication voluntarily. R.S. had reported to Dr. Anderson that she feared being sedated by her medication so that she was rendered unable to respond if someone tried to harm her. Also, Dr. Anderson described a consultation with R.S. in which she yelled: "This is a bunch of s--- and I don't need treatment, I don't need any Abilify, and I don't need any medicine." (Tr. 8.) He observed that R.S. "still has some delusions" and that, without treatment, her prognosis was "very poor." (Tr. 9, 13.) He expressed concern that her paranoia and anger could cause her to place herself in a situation where she would be harmed.

Pamela Matthews ("Matthews"), a recovery clinician at Gallahue, also testified regarding her observations of R.S. Matthews had known R.S. for seven years and described her poor judgment in refusing to obtain food or talk to anyone. However, Matthews observed that R.S. was able to provide food for herself if she was taking prescribed injections. According to Matthews, absent the injections, "others could harm

4

[R.S.] just because of her outburst, and then she believes that people are talking to her in different areas." (Tr. 22-23.)

From this testimony, a reasonable person could conclude that R.S. was dangerous at the time of the commitment extension hearing in that she was refusing prescribed medication and that she – absent proper medication – tended to isolate and starve herself and engage in angry, factually unsupported outbursts that could provoke harmful reactions from others.

## Conclusion

Gallahue presented sufficient evidence to support the commitment extension order.

Affirmed.

ROBB, J., and BROWN, J., concur.